# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES STEWART (B16743), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 14-cv-3095 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| KIMBERLY BUTLER, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Charles Stewart, a prisoner at the Menard Correctional Center, brings this *pro se* habeas corpus petition [1] pursuant to 28 U.S.C. § 2254 challenging his 2001 convictions in the Cook County Circuit Court for murder, attempted murder, and armed robbery. Petitioner claims that: (1) the trial court issued an erroneous jury instruction; (2) his trial counsel provided ineffective assistance by failing to object to the erroneous jury instruction[1]; (3) he did not waive his right to have a jury determine his eligibility for the death penalty; and (4) his trial counsel provided ineffective assistance by failing to investigate or call Carol Smith as an alibi witness. The Court denies the petition and declines to issue a certificate of appealability.

**I.     Background**

The following facts are drawn from the state court record, which Respondent has submitted in accordance with Rule 5(c) of the Rules Governing Section 2254 Cases. See [6]. The state court findings of fact are presumed correct, and Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. § 2254(e)(1)).

---

[1] Petitioner presented Claims One and Two as a single claim. The Court has separated them and renumbered the claims accordingly.

Petitioner's conviction arises out of an armed robbery of a jewelry store located at 5410 North Clark Street in the Andersonville neighborhood of Chicago, Illinois on Christmas Eve, 1995. [6-1] at 2. Late that afternoon, the store owner, Edison Jarrin ("Jarrin"), and his employee, Oscar Alva ("Alva"), were preparing to the close the store. *Id.* Alva was murdered during the robbery. Jarrin was able to escape and testified at trial.

Petitioner and a second offender arrived at the jewelry store's front door and rang the security door bell. [6-1] at 2. There was a security lock on the store's front door, which required customers to be buzzed in and out of the store. *Id.* Jarrin recognized Petitioner from the neighborhood. *Id.* Although Petitioner's name is Charles Stewart, Jarrin knew him as Bill. [6-6] at 9-10. Jarrin had known Petitioner for several years, since Petitioner was around 13 years old. *Id.* at 11. Petitioner would come by the store occasionally over the years, then disappeared for about five years, and then reappeared. *Id.* Petitioner came back to the store sometimes to ask Jarrin to replace a battery. *Id.* Petitioner had a family member who worked at a nearby McDonald's. *Id.*

Shortly before or after Petitioner and the other man entered the store on the afternoon of Christmas Eve, Clara Ortiz arrived at the store. [6-1] at 2, 4; [6-7] at 6. Jarrin was married to Ortiz's niece. [6-1] at 4. The men asked Jarrin to attend to Ortiz first, which Jarrin did. [6-1] at 2; [6-7] at 6. Ortiz then left the store and Jarrin attended to Petitioner. [6-1] at 2.

Petitioner gave Alva a watch to have its battery replaced. [6-1] at 2. Petitioner then pulled out a gun and potato. *Id.*; [6-6] at 21. Apparently, the potato was intended to be used as a homemade silencer. [6-1] at 2, n.2. Alva fled towards the back of the store in an attempt to trigger the alarm. [6-6] at 21. Petitioner followed Alva and fired two shots at him. [6-1] at 2;

[6-6] at 21. Petitioner ordered Jarrin to lay down in the back of the store. [6-6] at 23. Petitioner saw Alva lying on the floor, motionless, and bleeding. [6-1] at 2-3.

As Jarrin lay on the floor, Petitioner searched the back of the store and safes for diamonds, while the other man took jewelry from the front of the store. [6-1] at 3. While Petitioner was looking in the safe, Jarrin fled to the front of the store in an attempt to escape. *Id*. Jarrin heard a gunshot while he ran, but was not struck by the bullet. *Id*. Jarrin attempted to manually unlock the security door at the front of the store. *Id*.

Petitioner and the other man engaged in a struggle with Jarrin at the front door. [6-1] at 3. Jarrin and Petitioner struggled for the gun, while the other man kicked Jarrin. *Id*. Petitioner struck Jarrin on the head with the gun several times, causing Jarrin to stop struggling. *Id*. During the struggle, Jarrin noticed a Chinese man, later identified as Frank Dam ("Dam")—a delivery man for the Chinese restaurant next door—standing outside the front of the jewelry store. *Id*. at 3, 5. Once the struggle was over, Petitioner and the other man fled on foot from the jewelry store. *Id*. at 3.

Dam went to the restaurant after seeing Jarrin and the two offenders struggling inside the jewelry store. [6-1] at 5. As Dam entered the restaurant at approximately 5:00 p.m., he saw the two offenders run past the restaurant's front door. *Id*. at 4-5. Dam identified Petitioner as one of the offenders. *Id*. at 5. Fung Mee Lee ("Lee"), a cashier at the Chinese restaurant, and her husband, Chi Man Tse ("Tse"), were also in the restaurant. *Id*. at 4. They also saw the offenders flee from the scene. *Id*. Specifically, Lee saw one man fleeing with a gun in his hand, while the other man was carrying a shopping bag. *Id*. After Petitioner and the other man fled the scene, Jarrin ran next door to the Chinese restaurant and told the restaurant workers to call the police. *Id* at 3.

The police arrived on the scene shortly thereafter. [6-1] at 3. They found Alva dead. *Id*. The medical examiner later determined that Alva had died from multiple gunshot wounds. *Id*. Petitioner gave the police a general description of the offenders, but he did not tell the police that he recognized one of the offenders or knew him as Bill. *Id*. Jarrin was taken to a local hospital where he received sutures for lacerations on his head. *Id*.

The record provides two explanations for why Jarrin did not immediately identify Petitioner as the offender when the police arrived at the jewelry store. First, Jarrin was in an excited state as he had just been robbed and assaulted. He testified that he felt very dizzy from the assault. [6-6] at 28, 32. He had been struck over the head with a gun and kicked during the struggle with the offenders. Jarrin was also distressed over Alva's murder. The responding police officer testified that when he arrived at the jewelry store, he found Jarrin in an "excited state" "yelling and screaming, pointing to the rear" of the jewelry store where Alva's body was located. [6-8] at 19. Second, the responding police officer testified that he did not ask Jarrin if he knew the offenders' names. *Id.* at 17, 20. Instead, the officer sought a description of the offenders. *Id.* at 21; [6-1] at 3.

Jarrin was released from the hospital later the same evening. [6-1] at 5. Police detectives took Jarrin to the police station for an interview. *Id*. Jarrin identified one of the offenders as Bill during the interview. *Id*. at 3, 5. He also identified Petitioner as the offender in a photo array shown to him by the detectives. *Id*. at 4.

Three days later, on December 28th, the police went to the home of Raymond Hicks to inquire about Petitioner. [6-1] at 6. Hicks informed the police that he had known Petitioner for about 13 or 14 years. *Id*. Hicks related that Petitioner had come to his house on December 25, 1995 at 2:30 a.m. *Id*. Petitioner wished Hicks a Merry Christmas and gave him a gold chain.

4

*Id.* Hicks stated that Petitioner appeared nervous and had a several bags of gold chains, rings, and other jewelry with price tags on them. *Id.* Hicks gave the gold chain he received from Petitioner to the investigating police officer. *Id.* Jarrin later identified the chain as having been taken from his store during the robbery. [6-1] at 10.

The Chicago Police Department did not locate Petitioner until May 1996. [6-1] at 7. He was found in Los Angeles County, California serving time in prison. *Id.* He was using the name Nathaniel Walker in California. *Id.* He was extradited to Illinois in January 1997. *Id.* Lee, Ortiz, and Tse viewed a police lineup. Ortiz and Lee both identified Petitioner as the offender, but Lee indicated that she was not sure. *Id.* Tse, however, picked a different individual in the lineup. *Id.* Jarrin, Lee, and Ortiz made in-court identifications of Petitioner as the offender. [6-6] at 10, 100-101; [6-7] at 10-11.

The police recovered two knit caps (one black and one green), three .25 caliber casings, a live .38 caliber round, and a spent bullet from the crime scene. [6-7] at 62-63, 126-127. A police evidence technician identified fingerprints and palm prints in the jewelry store. Petitioner's fingerprints and palm prints did not match any of the fingerprints and palm prints in the store. [6-7] 40. Additionally, there was no physical evidence to link Petitioner to the caps or ammunition. The forensic evidence suggested that the green knit cap that they recovered belonged to Alva. [6-7 at 127].

Petitioner was convicted and sentenced to life imprisonment. He has completed his direct appeal and state post-conviction proceedings. He now brings the instant habeas corpus petition.

5

**II. Petitioner's Claims**

    **A.    Claims One and Two:   Jury Instructions and Associated Ineffective Assistance of Counsel Claims**

Petitioner argues in Claim One that the trial court erred in how it tendered Illinois Pattern Jury Instruction 3.15 to the jury. Claim Two is a related claim that trial counsel was ineffective for failing to object to the instruction.

The trial court provided the following instruction to the jury:

> When you weigh the identification testimony of a witness, you should consider all of the facts and circumstances in evidence including but not limited to the following. The opportunity the witness – the opportunity the witness had to view the offender at the time of the offense, or, the witness' degree of attention at the time of the offense, or, the witness' earlier description of the offender, or, the level of certainty shown by the witness when confronting the defendant, or, the length of time between the offense and the identification confrontation.

[6-8 at 102]. This instruction was drawn verbatim from Illinois Pattern Instruction 3.15 that existed at the time of Petitioner's trial.

Petitioner's argument centers on the use of "or" between the factors. He believes this is contradictory and confusing to the jury given that the first sentence tells the jurors to consider all the facts and circumstance. However, adding the "or" between the individual factors may suggest to the jury to focus on a specific factor to the detriment of the other factors and the totality of the evidence. Petitioner's argument echoes Illinois case law on this point.

Illinois law holds that tendering Pattern Instruction 3.15 with the "or" between the factors is an error because it confuses the jury. *Illinois v. Herron*, 830 N.E.3d 467, 482 (Ill. 2005). As noted by the Supreme Court of Illinois, the first part of the instruction instructs the jury to consider all facts and circumstances when weighing the identification testimony. *Id*. However, when the instruction provides factors to assist in this consideration with the "or" between the factors, the

instruction could improperly cause the jury to consider a specific factor to the detriment of its responsibility to consider the totality of the evidence. *Id*.

The pattern jury instruction authors placed the "or" between the factors to inform the judge and attorneys that not every factor maybe relevant to the case. *Herron*, 830 N.E. 3d at 481. When crafting the jury instruction, the word "and" is substituted for the "or" between the relevant factors for that case. *Id*. However, in this case, the pattern instruction was given verbatim with the "or" instead of the "and." Petitioner raises this argument in Claim One, and in Claim Two asserts that his attorney was ineffective for failing to object to the use of the "or" in the instruction.

Respondent counters that Claim One is procedurally defaulted because the Appellate Court on direct review considered the "or" issue forfeited, and thus only subject to review for plain error. Under Illinois law, to preserve the issue for appeal, Petitioner was required to make a contemporaneous objection and raise the issue in a timely post-trial motion. *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005) (citing *Illinois v. Enoch*, 522 N.E.2d 1124, 1129-30 (Ill. 1988)). As Petitioner concedes, at trial there was no objection to the use of "or" in the jury instruction. The state appellate court recognized that the error was not properly preserved for review. [6-1] at 9. The state appellate court further concluded that the evidence did not "merit[] application of the plain error principle." [6-1] at 9 (citing *People v. Nielson*, 718 N.E.2d 131, 147 (1999) (recognizing that plain error review may be invoked in "two limited circumstances": (1) "where the evidence is closely balanced, so as to preclude the argument that an innocent person may have been wrongly convicted"; and (2) "where the error is of such magnitude that there is a substantial risk that the accused was denied a fair and impartial trial, and remedying the error is necessary to preserve the integrity of the judicial process"). The state court's conclusion that there was not

7

plain error is an adequate and independent state ground of decision resulting in procedural default of Claim One. *Kaczmarek v. Rednour*, 627 F.3d 586, 592-93 (7th Cir. 2010).

Despite the procedural default of Claim One, Petitioner is correct that the default can be excused if he establishes cause for the default and prejudice resulting therefrom. An ineffective assistance of counsel claim can constitute cause and prejudice to excuse a procedural default. *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010) (citing *Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000)). On direct appeal, Petitioner argued that his trial attorney was ineffective for failing to properly raise the "or" issue. [6-1] at 51; [6-2] at 15.

The Court applies the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), when adjudicating an ineffective assistance of counsel claim asserted to excuse a procedural default. *Richardson v. Lemke*, 745 F.3d 258, 273 (7th Cir. 2014). Thus, Claims One and Two effectively collapse into a single inquiry. The questions of whether ineffective assistance of counsel can excuse the procedural default of Claim One, or results in a free standing constitutional violation under Claim Two, require the identical analysis.

Here, the AEDPA's deferential standard of review under § 2254(d) is not applicable because the state court did not adjudicate Petitioner's ineffective assistance of counsel claim on the merits. *Ruhl v. Hardy*, 743 F.3d 1083, 1091 (7th Cir. 2014) ("If no state court has squarely addressed the merits of a habeas claim, we review the claim de novo under the pre-AEDPA standard of 28 U.S.C. § 2243, but still with deference to the state court.").[2] Accordingly, the

---

[2] Petitioner's present ineffective assistance of counsel claim for failing to challenge the jury instruction was not raised on direct appeal. Petitioner raised a different ineffective assistance of counsel argument regarding the failure to investigate or call alibi witness Carol Smith in his postconviction proceedings. The ineffective assistance of counsel issue regarding alibi witness Smith is resolved in Claim Four.

It should be noted that the state appellate court on postconviction review adjudicated the ineffective assistance of counsel as to Smith on the merits resulting in this Court applying the AEDPA deferential standard of § 2254(d) to its review of Claim Four. It has been argued that a federal court should apply the

Court addresses the ineffective assistance of counsel claim—be it in the context of a free standing claim or to excuse the procedural default—de novo.

To establish an ineffective assistance of counsel claim, Petitioner must demonstrate (1) deficient performance by counsel; and (2) prejudice. *Woods v. Donald*, 135 S. Ct. 1372, 1375 (2015) (per curiam) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Petitioner cannot meet the requirements of either prong of *Strickland*.

As to the deficient performance prong, Petitioner's counsel was not deficient because the trial court used the pattern instruction as it existed at the time of Petitioner's trial. *Illinois v. Gonzalez*, 761 N.E.2d 198 (Ill. 2001), was the first Illinois decision holding that the inclusion of "or" in the jury instruction resulted in jury confusion. *Gonzalez* was decided on November 26, 2001, more than eight months after Petitioner's trial. [6-8 at 2]. Defense counsel was not obligated to anticipate changes in the law, but was required to make arguments that are sufficiently foreshadowed by existing case law. *Shaw v. Wilson*, 721 F.3d 908, 916-17 (7th Cir. 2013). The Court could not locate any Illinois case law foreshadowing the *Gonzalez* decision. Petitioner's trial counsel was not deficient for failing to raise an objection to the inclusion of the "or" in the instruction as the Illinois courts had not yet held this was an error. See *Smith v. McKee*, 598 F.3d 374, 384 (7th Cir. 2010) ("Pattern Jury Instruction 3.15 was codified in 1992 and remained in use until 2001. Defense counsel did not act in an objectively unreasonable manner by not objecting to the use of an applicable pattern jury instruction."); *Fernandez v. Pfister*, 2014 WL 4668395, at *7 (N.D. Ill. Sept. 19, 2014) ("a lawyer's failure to object to the use of an applicable pattern jury

---

AEDPA § 2254(d) review to all ineffective assistance of counsel arguments when the state court considered any component of counsel's performance because the Court must review counsel's performance as a whole instead of in a piecemeal fashion. See *Carter v. Duncan*, 819 F.3d 931, 950 (7th Cir. 2016) (Easterbrook, J., concurring). However, the law in this Circuit requires the piecemeal approach of applying the AEDPA standard only when the state court has ruled on the particular component of an ineffective assistance of counsel argument. *Id.*; *see also Thomas v. Clements*, 797 F.3d 445, 446-49 (7th Cir. 2015) (Easterbrook, J., concurring from denial of reh'g en banc).

instruction—as IPI 3.15 was at the time of Fernandez's trial—does not amount to objectively unreasonable assistance of counsel under *Strickland*").

Petitioner also cannot establish prejudice. To show prejudice, there must be a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) (per curiam) (quoting *Strickland*, 466 U.S. at 694-95).

In this case, the evidence of Petitioner's guilt is overwhelming. Three separate eyewitnesses—Jarrin, Lee, and Ortiz—made in-court identifications of Petitioner as the offender. Jarrin, who had known Petitioner for many years, told police that Petitioner was the offender when interviewed at the police station the evening of the murder. He also identified Petitioner in a picture the police showed to him at the station during the interview. Additionally, Ortiz and Lee picked Petitioner out in a police lineup as the offender. A single eyewitness is sufficient evidence for a guilty verdict. *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2009) ("'[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar.'"). Here, three separate eyewitnesses identified Petitioner.

Beyond the eyewitness testimony, there is also the gold chain that Petitioner gave to Hicks, which Jarrin later identified as having been taken from his store during the robbery. [6-1] at 10. Petitioner came to Hicks's home on December 25, 1995 at 2:30 a.m. This was less than twelve hours after the robbery. Hicks testified that Petitioner appeared nervous, and had several bags of gold chains, rings, and other jewelry with price tags on them. Petitioner gave a gold chain to Hicks. Hicks turned the chain over to the police when they came to his home three days later on

December 28th. It is reasonable to conclude that the bags of jewelry were proceeds from the robbery. Further, Hicks testified that he had known Petitioner for 13 or 14 years. Appearing at Hicks's home at 2:30 a.m. on Christmas morning to give him the gold chain, while appearing nervous, and carrying bags of jewelry with the price tags is additional evidence to support Petitioner's guilt. Petitioner's visit to Hicks can reasonably be viewed as Petitioner saying goodbye to Hicks before fleeing to California.

Additionally, by the time Petitioner was located, he was living in California using the alias Nathaniel Walker. "[I]t is generally accepted that 'flight can be strong evidence of guilt.'" *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003) (quoting *United States v. Lima*, 819 F.2d 687, 689 (7th Cir. 1987)). The evidence shows that Petitioner fled to California after committing the crime. His flight is understandable as Jarrin knew Petitioner and could easily identify him to the police. In sum, there is overwhelming evidence of Petitioner's guilt.

It is true that Jarrin did not name Petitioner when speaking to the first police officer on the scene. However, Jarrin's actions are reasonable when put in the context of the fact that he had just witnessed his coworker being murdered, had just been assaulted during the robbery, and the officer asked for a description of the offender, not his name. Jarrin identified Petitioner in his first interview with the police detectives later that evening after he had been taken to the hospital for treatment.

Therefore, the Court concludes that Petitioner's defense attorney was not ineffective for failing to object to the inclusion of "or" in the jury instruction because Illinois law at the time of Petitioner's trial did not consider the inclusion of the "or" to be a legal error. Additionally,

Petitioner cannot demonstrate prejudice because the evidence of his guilt is overwhelming. Claim One is procedurally defaulted, and Claim Two is meritless.[3]

### B. Claim Three: Jury Waiver for Death Penalty Determination

Petitioner next argues that he did not validly waive his right to have a jury determine whether he was eligible for the death penalty.[4] With the jury right waived, the trial court sentenced Petitioner to life imprisonment.

Respondent correctly notes that the state appellate court on direct appeal held that this issue was waived because it was not preserved in the trial court through a timely objection and post-trial motion as required. [6-1 at 17]. This results in procedural default of the claim. *Kaczmarek*, 627 F.3d at 592-93. However, unlike with Claims One and Two, there is no relevant cause and

---

[3] The fact that *Gonzalez* was decided after Petitioner's trial raises the question of whether the "or" issue is a novel claim that can excuse procedural default. "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed v. Ross*, 468 U.S. 1, 16 (1984). However, in the instant case, Petitioner's argument is a failure to give a proper jury instruction. The underlying constitutional claim of whether a jury instruction violated due process was not a novel claim when Petitioner went to trial in 2001. See *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (evaluating due process challenge to erroneous jury instruction). But even if Petitioner could reach the underlying merits of Claim One, the claim would be rejected because the evidence of Petitioner's guilt is overwhelming. To establish a due process violation from an erroneous jury instruction, Petitioner must show that there is likelihood that the erroneous instruction resulted in the conviction of an innocent person. *Estelle*, 502 U.S. at 71-72; *Perruquet v. Briley*, 390 F.3d 505, 510-12 (7th Cir. 2004). As previously discussed, the evidence of Petitioner's guilt is overwhelming meaning that any potential jury instruction error could not have resulted in the conviction of an innocent person.

[4] Illinois has abolished the death penalty. 725 ILCS 5/119-1. However, Petitioner's claim is not moot. Petitioner's murder conviction qualifies as a Class X felony with a sentencing range of 20 to 60 years. 730 ILCS 5/5-8-1; 730 ILCS 5/5-4.5-20. Committing the murder in the course of an armed robbery, and personally discharging the murder weapon, are aggravating factors allowing for Petitioner's life sentence. 730 ILCS 5/5-8-1(a)(1)(d)(iii). Illinois gave the sentencing judge the option of imposing a life sentence, but it was not mandatory. *Id*. Should Petitioner win on his present sentencing argument resulting in a resentencing, Petitioner would be resentenced by a judge instead of having a hearing before a jury as the death penalty is no longer a sentencing option. But, the new sentencing judge would have the option of imposing a sentence less than life because Petitioner would not face a mandatory life sentence on resentencing. Consequently, as Petitioner can obtain a sentence less than his current life sentence should he win relief in this Court, the present habeas corpus claim is not moot.

prejudice, or fundamental miscarriage of justice exception available to Petitioner. Claim Three is barred by procedural default.[5]

### C. Claim Four: Ineffective Assistance of Counsel Claim for Failing to Investigate and Call Carol Smith as an Alibi Witness.

Petitioner's final claim is that his trial lawyer was ineffective for failing to investigate Carol Smith, an alibi witness. Petitioner alleged in his state postconviction petition that he told his trial attorney to call Carol Smith as an alibi witness. [6-2] at 37. Defense counsel allegedly refused Petitioner's request. *Id*.

According to Carol Smith's affidavit (which is dated April 30, 2006), she lived at 365 North Oak in Chicago, Illinois[6] on the day of the armed robbery and murder. [6-2] at 38. Her daughter, Courtney Smith, who is deceased, was dating Petitioner on the day of the armed robbery. *Id*. Carol Smith stated in her affidavit that she could see her daughter and Petitioner standing outside through her front window at 365 Oak Street at 5:00 p.m. on December 24, 1994, which was

---

[5] For completeness purposes, the Court notes that Claim Three, in addition to being procedurally defaulted, is also meritless. As the state appellate court decided the case on the merits, in addition to finding the claim waived, the Court applies the AEDPA review under 28 U.S.C. § 2254. (The state court's decision to rule on the merits in addition to finding waiver does not impact the Court's conclusion that Claim 3 was procedurally defaulted because the state court made a clear and express waiver finding, and made its merits determination in the alternative to its waiver finding. *Smith*, 598 F.3d at 383.) Petitioner waived his right to a jury during the death penalty hearing through a written waiver that was explained to him by his attorney. His primary argument is that the trial court should have explained his rights to him during an in-court colloquy instead of accepting a written waiver. Although Petitioner must make a knowing and intelligent waiver of his rights, there is no requirement that the trial court conduct an in-court colloquy before accepting a waiver of jury rights at sentencing. *Whitehead v. Cowan*, 263 F.3d 708, 732-33 (7th Cir. 2001). As there is no clearly established federal law from the Supreme Court of the United States to support Petitioner's claim, the claim must fail. 28 U.S.C. § 2254(d)(1); *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009).

[6] Although Smith's affidavit gives her address at 365 North Oak, Chicago, Illinois, Oak Street runs east to west in Chicago. There is no 365 East Oak Street as that address would be in Lake Michigan. The only possible correct address is 365 West Oak Street. 365 West Oak Street was once a public housing building in the Cabrini Green housing development. See *CHA To Clear Out Most Cabrini-Green Row Houses*, Chicago CBS Local, Sept. 2, 2011, http://chicago.cbslocal.com/2011/09/02/cha-to-clear-out-most-cabrini-green-row-houses/ (last visited 10/21/16). The public housing building at 365 West Oak has been demolished, and according to Google Maps, is now a vacant lot.

13

the approximate time that the robbery and murder occurred. *Id*.; see also [6-1] at 4 (citing Lee testimony that at approximately 5:00 p.m., Dam entered the restaurant and told him to call 911). According to Google Maps, 365 West Oak Street is approximately six miles from the jewelry store at 5410 North Clark Street.

Carol Smith said that she attempted to contact Petitioner's attorney by phone, but the attorney never returned her calls. [6-2] at 38. She claims that she would have testified on Petitioner's behalf if called at his trial. *Id*.

The state appellate court rejected Petitioner's ineffective assistance of counsel claim for failure to investigate and call Carol Smith as an alibi witness. The court noted that defense counsel was aware of Carol Smith, as she was named as a possible witness in pretrial discovery tendered by defense counsel. [6-3] at 31; [6-9] at 84. Despite being a potential witness, the state appellate court concluded that defense counsel made a strategic choice to not call Carol Smith as a witness because, as a "close relation[]," Smith's testimony would have minimal value before the jury. [6-3] at 31. The state court also concluded that Petitioner could not demonstrate prejudice by the failure to call Smith because of the overwhelming evidence of Petitioner's guilt. *Id*.

Petitioner's ineffective assistance of counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, Petitioner must demonstrate both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Court's review under *Strickland* is deferential and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles*, 556 U.S. at 123.

The state court's decision was not contrary to *Strickland* as it identified the controlling standard. [6-3] at 31. In regard to the unreasonable application analysis, the Court first considers the state court's analysis of counsel's performance. The state court concluded that the decision not to call Carol Smith was a matter of trial strategy. [6-3 at 31]. The court noted that defense counsel was clearly aware of Smith as she was disclosed as a possible witness in pretrial discovery. *Id*. The state court concluded that Smith must not have been called because of her close relationship to Petitioner. *Id*.

It should be noted that the record does not provide defense counsel's actual motivation for not calling Smith; the state appellate court's conclusion is speculation because the *Strickland* claim was resolved by the state trial court on the pleadings without a hearing. Thus, at this time, the Court only has Petitioner's and Smith's affidavits asserting that they informed trial counsel that Smith was an alibi witness but defense counsel chose not to interview Smith or call her at trial.

A defense attorney's rejection of a witness because of her close ties to a defendant is "deeply problematic." *Brady v. Pfister*, 711 F.3d 818, 824 (7th Cir. 2013). "Witnesses with ties of family or friendship to a defendant are a common feature in criminal cases, and those witnesses are often privy to details that influence the outcome of a case." *Id*. "Indeed, the law does not demand, or even permit, the disregarding of their testimony just because they are close to the accused." *Id*. (citing *Raygoza v. Hulick*, 474 F.3d 958, 965 (7th Cir. 2007)). Under this guidance from the Seventh Circuit, the state appellate court's conclusion that it is proper for a defense counsel to reject a possible alibi witness out of hand, without even interviewing her, because she is a close relation to a defendant is an unreasonable application of *Strickland*.

The Court appreciates that defense counsel is not required to call at trial every possible witness suggested to her. *Blackmon v. Williams*, 823 F.3d 1088, 1103 (7th Cir. 2016). Counsel,

15

instead, "need only investigate possible lines of defense and make an informed decision." *Id*. at 1102 (citation omitted). Furthermore, the Court begins with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. However, defense counsel has "'a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Campbell v. Reardon*, 780 F.3d 752, 767 (7th Cir. 2015) (quoting *Strickland*, 466 U.S. at 691). As the state trial court failed to hold a hearing, there is no evidence at this time as to what efforts, if any, defense counsel took to investigate the potential alibi witness.

In view of (1) the state appellate court's unreasonable determination that defense counsel could reject a potential alibi witness out of hand because of her close personal relationship to the defendant, and (2) the absence of evidence concerning defense counsel's investigation of the alibi witness issue (because no hearing was held in the state court), the Court must consider whether the state appellate court's determination that Petitioner cannot demonstrate prejudice under *Strickland* was objectively unreasonable. If it was, then the Court may be required to proceed to an evidentiary hearing under § 2243 de novo review on the performance issue. If it was not, then Petitioner's habeas claim must fail.

To show prejudice, there must be a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Hinton*, 134 S. Ct. at 1089 (quoting *Strickland*, 466 U.S. at 694-95).

The state appellate court opinion concluded that the evidence of Petitioner's guilt was overwhelming. The state court noted that there were multiple eyewitness identifications of Petitioner as the offender (including an identification by a witness who had known Petitioner for

16

many years), Petitioner's possession of proceeds from the robbery (the bags of jewelry he had at Hick's home less than 12 hours after the robbery), and Petitioner's flight to California following the robbery. As previously mentioned above, the Court agrees that the evidence of Petitioner's guilt is overwhelming. Applying the deferential standards of *Strickland* and the AEDPA, the Court concludes that Petitioner cannot demonstrate that the state court decision finding no prejudice was an unreasonable application of *Strickland*.

The Court is aware of *Blackmon v. Williams*, 823 F.3d 1088 (7th Cir. 2016), and *Stitts v. Wilson*, 713 F.3d 887 (7th Cir. 2013). In both cases, the Seventh Circuit held that the failure to investigate an alibi witness in an eyewitness case resulted in prejudice under *Strickland*. However, both cases are distinguishable from the instant case. In *Blackmon*, the state's only evidence was two eyewitnesses who were strangers to the defendant and had only a brief opportunity to view him. 823 F.3d at 1106. *Blackmon* noted that eyewitness evidence under those circumstances was rather weak because of the general concerns of misidentification by eyewitnesses who are strangers to the defendant. *Id*. There was also a "complete lack of any [evidence of] motive" and a "dearth of physical evidence." *Id.* at 1107. In addition, the defense in *Blackmon* had several alibi witnesses, most of whom were disinterested in Blackmon's case. *Id*. at 1106. In *Stitts*, the only evidence tying Stitts to the crime for which he was convicted was "two somewhat unreliable witnesses." 713 F.3d at 894.

By contrast, in the instant case, eyewitness Jarrin had known Petitioner for many years before the crime. See *Morales v. Johnson*, 659 F.3d 588, 602 (7th Cir. 2011) (holding that identification by eyewitness who knows offender is strong evidence of guilt when rejecting *Strickland* prejudice argument). Jarrin's identification is bolstered by two other eyewitnesses who identified Petitioner. See *Woods*, 589 F.3d at 378 (holding no prejudice under *Strickland*

because "two eyewitnesses is very strong evidence of guilt."). Additionally, there is evidence beyond the eyewitnesses. Petitioner went to Hicks's home in the middle of the night, where Petitioner appeared to be nervous and had bags of jewelry with price tags still on them. Jarrin later identified a chain from that haul of jewelry as having been taken from his store during the robbery. [6-1] at 10. Petitioner also fled to California, where he used a different name. The existence of multiple witnesses including a witness who had known Petitioner for many years, Petitioner's possession of the apparent proceeds from the robbery, his nervousness following the robbery, and his flight to California and use of an assumed identity all point strongly toward his guilt. Applying the doubly deferential standards of the AEDPA and *Strickland* as required, the Court cannot say that the state appellate court ruling on the *Strickland* prejudice prong was objectively unreasonable. Thus, Claim Four is denied. The habeas corpus petition is denied on the merits.

### III. Certificate of Appealabilty

The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree with, this Court's resolution of this case. *Resendez v. Knight*, 653 F.3d 445, 446-47 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

As to Petitioner's claim that trial counsel was ineffective for failing to investigate and call Carol Smith as an alibi witness, the Court recognizes that the state appellate court should not have dismissed Smith as a potential alibi witness simply because she was a close relation of Petitioner's girlfriend. See *Brady*, 711 F.3d at 824. Nonetheless, the Court concludes that a certificate of

appealability is not warranted due to the overwhelming evidence of Petitioner's guilt, which includes: the identification by the store owner, who had known Petitioner since he was a child; the identifications of two witnesses from the Chinese restaurant; Hicks' statement that Petitioner showed up at his house in the middle of the night after the robbery to give him a chain with a tag still attached and the store owner's subsequent identification of the chain as belonging to the store; and Petitioner's flight to California and use of an alibi. In addition, the Court must keep in mind that, under AEDPA, deference must be given to the state appellate court's finding that the evidence of Petitioner's guilt was overwhelming. Under the facts here, the Court concludes that reasonable jurists would not conclude that the state appellate court's application of the *Strickland* prejudice prong was objectively unreasonable. For these reasons, the Court declines to issue a certificate of appealability.

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. See Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. See Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. See Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. See Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. See Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. See Fed. R. Civ. P. 6(b)(2).

A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. See Fed. R. App. P. 4(a)(4)(A)(vi).

## IV. Conclusion

Petitioner's habeas corpus petition [1] is denied on the merits. Any pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to enter a judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

Dated: December 6, 2016

							Robert M. Dow, Jr.
							United States District Judge